238

PEJEPSCOT PAPER COMPANY, APPLT.

*vs.*

STATE OF MAINE.

Washington.                    Opinion, May 5, 1936.

*Robinson and Richardson,* for appellant.
*Locke, Campbell & Reid,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.   A tax was levied by the state on 18,603 acres of petitioner's wild land in T. No. 18, and 20,800 acres of such land in T. No. 25, both townships in Middle Division of Washington County, in accordance with the certification of the state board of equalization under date of December 1, 1934, the "assessed valuation" of the lands taxed in each township being found by the state authorities, on separate bases, as "timbered" land at $72,418.00, open blueberry land at $23,317.00, the tax levied on the timbered land being on an average valuation of $2.00 an acre, on the blueberry land at $1.00 an acre.

The petitioner deeming itself aggrieved by the value set upon its lands for purposes of taxation, appealed therefrom to the Superior Court, and its case is brought up, on report, that its appeal may be tried, heard and determined here.

The burden of proof is on the petitioner to show that the findings of the state authorities work upon it an injustice.

No evidence of the facts found by the taxing board is presented in the "stipulation" made a part of the report, and in the exhibits, except such as may appear in the title deeds.

The land assessed to the petitioner was acquired by purchase from the Sagadahoc Towing Company, as evidenced by deed dated June 4, 1928.

As to land purchased of the Towing Company, located in Township 18, petitioner's grantor acquired title to a portion by deed of Joseph G. Ray, dated February 26, 1917.

This deed contains the following reservation:

"The Grantor, however, reserves to himself, his heirs and assigns, these things, as if expressly granted to him by original conveyance from the Grantee herein: The right, privilege and easement to cultivate, pick and remove all blueberries on such parts of said township eighteen as shall not be timbered lands, and shall constitute reasonably and fairly blueberry lands, together with the right, privilege and easement of proper and reasonable ingress thereto and egress therefrom, and the proper and reasonable use and occupancy thereof for picking said blueberries and burning said blueberry lands for the purpose of aiding the blueberry growth, but the burning of said blueberry lands for the purpose of aiding the blueberry growth shall be done in full compliance with and conformity to all legal, reasonable and proper regulations, and the Grantee, its successors and assigns, shall have the opportunity and right to supervise said burning."

And, while not of greatest importance, in the same deed this covenant also appears:

"The Grantee covenants and agrees to and with the Grantor, his heirs and assigns, to pay and discharge, as they may become due and payable, all taxes levied upon the lands hereby conveyed, and that this covenant shall run with the land."

To the rest of the 18,603 acres of land of petitioner, in Township 18, we learn from the stipulation that the title of plaintiff's grantor was by deed from Charles W. Mullen, which deed recited a previous conveyance from Joseph G. Ray to said Mullen, and that the latter deed contained the following:

"It is understood and agreed that said Ray reserves the right to pick and carry away blueberries on the lands hereby conveyed, but not to interfere in any way with the operations of the Grantee at any time."

As to plaintiff's land in Township 25, the Sagadahoc Towing Company, eleven years before date of its deed to plaintiff, made the following grant to the Fry Pulpwood Company, a corporation existing under the laws of Maine, and located at Ellsworth:

"Full license and permission, without further payment, to pick and remove all blueberries on such lands in Township Number Twenty-five, Middle Division, Washington County, Maine, owned by the Sagadahoc Towing Company and conveyed to it by deed from John A Peters, dated January 13th, 1917, recorded in Book     , Page     , of Washington County Registry of Deeds, as shall be reasonably and fairly designated from time to time by the Sagadahoc Towing Company, or its successors or assigns, owners of said lands, with the right on the part of said licensee, its successors and assigns under the supervision of the Sagadahoc Towing Company, its successors or assigns as owners of said lands, to burn said designated lands for the purpose of aiding blueberry growth, and with the right on the part of said licensee, its successors and assigns, to ingress and egress and the proper use and occupancy thereof for picking and burning."

On no portion of the lands with which this case deals have the rights to, the interest or privilege in the blueberry bushes or their fruit been conveyed to or acquired by the petitioner, or any of its predecessors in title subsequent to the grants above quoted.

What is "open blueberry land" may be well understood by virtue of a custom among owners of land where the blueberry bush is a natural product.

What is "open blueberry land" in tracts adjacent to timbered or wooded areas may differ in different localities. No evidence is furnished us of the distinctive meaning of the term, as used and understood by the parties to the grants recited above.

It is not known whether timber or wood may not be growing in clumps or patches interspersed with the blueberry bushes, on the so-called open blueberry lands, nor whether in the evolution of forest growth a time may come when pulpwood, timber, or wood, may not be taken from the reserved tracts.

The right to cultivate the blueberry bush is claimed and accorded. It is the bush that is cultivated. "God giveth the increase."

It is the policy of the State that all property therein, except what is exempt from taxation by statute, shall bear its fair share of the tax burden, and it is beyond question that the "land," whatever its burden, on the surface or below, is properly taxed.

"Real estate, for the purpose of taxation, except as provided in section six, includes all lands in the state, together with the water power, shore privileges and rights, forest and mineral deposits appertaining thereto, and all buildings erected on or affixed to the same, and all townships and tracts of land, the fee of which has passed from the state since the year eighteen hundred fifty, and all interests in timber upon public lands derived by permits granted by the commonwealth of Massachusetts; interest and improvements in land, the fee of which is in the state; and interest by contract or otherwise in land exempt from taxation. . . ." R. S., Chap. 13, Sec. 3.

So, from its beginning as a state, Maine has taxed its unorganized area.

"The word 'land' or 'lands' and the words 'real estate' include lands and all tenements and hereditaments connected therewith, and all rights thereto and interests therein." R. S., Chap. 1, Sec. 6, Par. X.

Under our present statute the board of state assessors, with the assistance of the forest commissioner, and "all other state officers, when requested," as well as of the county commissioners of any county in which are any wild lands, shall fix the valuation of the wild lands of the state for the levy of the state tax thereon.

This board shall value for purposes of taxation the entire lands of all unorganized townships, with exception of certain tracts not involved in this case.

Two sentences in Chap. 12, Sec. 9, of R. S., expressive of the duty of the board, applicable here, read as follows:

"In fixing the valuation of unorganized townships whenever practicable, the lands and other property therein of any owners may be valued and assessed separately.

"When the soil of townships or tracts taxed by the State as wild land is not owned by the person or persons who own the growth or part of the growth thereon, the board of state assessors shall value the soil and such growth separately for the purpose of taxation."

It is the view of the petitioner that the term "growth" as used in this statute includes the blueberries produced in the open blueberry land in question, and that the board of state assessors must annually tax such blueberries to the owner or owners of the blueberry rights.

Petitioner overlooks the pertinency of the first words of the statute above quoted, "In fixing the valuation of unorganized townships whenever practicable," — the assessors may fix distinct values on lands and other property.

It is incumbent on the assessors not to tax on an assessment above a just and fair value.

And it is not incumbent upon them to tax when not practicable, —when for illustration the determination of the existence of property, such as a crop of wild fruit, and inspection thereof for purposes of valuation would entail expense incommensurate with the profit of the tax to the State.

It is our view that the second sentence of the statute quoted, on which petitioner bases its claims for abatement, requires separate valuation on soil and growth, only when practicable.

And in the record there is nothing to show the probable return from taxation of blueberry growth on petitioner's land. It is probably true that the annual yield per acre of blueberry tracts upon our wild lands can not be foretold with any degree of accuracy.

Certain it is that on a year of burning, the accepted method of cultivation of the low-bush blueberry, there is no crop to be harvested.

The quantity of the crop, like any other harvest is variable within the widest range, because of the multitude of factors that go to make a crop, and its quality fluctuates violently from the ravages of diseases and insect pests. Truly the board of assessors may have

adopted the policy of not valuing blueberry rights in unorganized townships.

But further and finally it is our opinion that the word "growth" as used in the statute quoted is in reason, and in any business view, limited to the enlargement and increase of trees valuable for timber and wood. In this we are guided by the custom of men who are owners of or operators on our wild lands, and by the many decisions of this Court in solving the real problems of persons interested in handling forest products almost from the organization of the state.

"Forest growth, oak growth, growth of timber, growth of wood, black growth," these terms and their limitations are well understood by all who deal in or read of Maine forests and woodlots, and assuredly so by majority of all Maine legislators.

As a guide in the construction of a statute, this rule is furnished: "Words or phrases shall be construed according to the common meaning of the language. Technical words and phrases and such as have a peculiar meaning convey such technical or peculiar meaning." R. S., Chap. 1, Sec. 6, Par. I.

It is our opinion that the legislature of 1895, in enacting chapter 132 of the Public Laws of that year, used the word "growth" in its common meaning as growth of timber or wood.

This is the statute upon which petitioner predicates its rights to abatement.

As we construe the statute there is no right to an abatement of the tax.

*Appeal dismissed.*